IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES DENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-cv-00442-JPG |
| | ) | |
| NICK NALLY, | ) | |
| LT MINOR, | ) | |
| C/O MILLER, | ) | |
| NANCY TAYLOR, | ) | |
| W BRADOCK, | ) | |
| LT DAVIS, | ) | |
| MAJOR FOLSON, | ) | |
| SHANE MARCANTEL, and | ) | |
| JASON GARNETT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Charles Dent is currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"). Proceeding *pro se*, Dent has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against several prison officials and a fellow prisoner. (*See* Doc. 1.) He seeks monetary and specific relief. (Doc. 1-1 at 18.)

This matter is now before the Court for a preliminary review of Dent's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Until recently, Dent was a law clerk at Big Muddy's library and acted as a confidential informant for the prison's Internal Affairs Department ("IAD"). On March 1, 2016, Dent informed his supervisor, Jennifer Wilson, that he wished to reveal information concerning widespread corruption in IAD, specifically as regarded Defendant Nick Nally, a correctional officer at Big Muddy. (Doc. 1 at 9.) He was afraid, however, they prison officials would retaliate against him if he did so. (*Id.*) Unbeknownst to Dent at the time, Wilson wrote up a "434" incident report about their conversation and sent it to Defendant Warden Garnett, who then relayed the information to Nally. (*Id.* at 12.)

Two days later, on March 3, 2016, Dent received s "green pass" to see Nally. (*Id.* at 9-10.) He informed Nally that Defendant Shane Marcantel, a fellow prisoner who was also an IAD informant, possessed confidential information that put his life at risk and that he has a history of providing IAD with false information. (*Id.* at 10.) He also told Nally that Marcantel was in a sexual relationship with a prisoner named Bradon Frazier. (*Id.*) Warden Garnett called Nally at this time, inquiring as to whether Dent was in his office. (*Id.* at 11.) Nally informed Garnett that he was. (*Id.*) Upon hanging up the phone, Nally said to Dent, "I know what you are trying to do."(*Id.*) Nally continued, "Don't say something that you will regret and I know that you informed your supervisor Mrs. Wilson something pertaining to me." (*Id.*). Garnett then showed up in Nally's office, told Dent that they (he and Dent) had a meeting scheduled for today, and that they will reschedule it for the next day. (*Id.* at 11-12.) (They never had that meeting. (*Id.* at 12).)

Several days later, Dent discovered that Nally informed Marcantel what Dent had told the former in confidence. (*Id.* at 13.) Marcantel told other inmates that Dent was a snitch and that he worked for IAD. (*Id.*) Dent then filed a grievance against Nally. (*Id.*)

At this point, Dent alleges that the defendants conspired to retaliate against Dent for filing a grievance against Nally. (*Id.* at 14.) Nally's participation in the conspiracy is evidenced by his statement to one of Dent's friends (a fellow prisoner) that he lost respect for Dent after Dent filed a grievance against Nally, and in his questioning of another inmate as to whether Dent runs the lines in the law library (instead of Wilson, his supervisor). (*Id.* at 15.) Apparently, in questioning this inmate about the law library, Nally was implying that Dent was improperly running the library lines. (*See id.* at 16.)

On the same date Nally questioned the inmate about Dent's responsibilities in the law library, Marcantel had received a green pass to see Nally. (*Id.*) Marcantel allegedly informed Nally and Defendant Lieutenant Minor that Dent improperly ran the library lines, causing the two officers "to pursue this false information." (*Id.*) Minor went to the library and demanded all of the files and request slips there, even though he knew that Wilson, not any of the inmates (including Dent), runs the call lines in the law library. (*Id.* at 16-17.)

Defendant Miller, a correctional officer, interviewed Bradon Frazier (with whom Marcantel was in a sexual relationship), and from him received false information that Frazier had been sexually harassed by Dent. (*Id.* at 19, 20.) Miller, along with Defendants Lieutenant Davis and Major Folson, then wrote a false disciplinary ticket and placed Dent in segregation on April 14, 2016. *(Id.* at 18, 20.)

On April 15, 2016, Dent received an investigation ticket. (*Id.* at 18-19.) Lieutenant Minor interviewed Dent, informing him that he was under investigation for sexually harassing Bradon

Frazier. (*Id.* at 19.) Instead of questioning him about the allegation of sexual harassment, however, he instead asked Dent why he did not get along with Nally and Marcantel, and why Dent filed a grievance against Nally. (Doc. 1-1 at 1.) He told Dent, "If you keep filing grievances you will be here and we will keep talking." (*Id.*) He also told him that his grievance against Nally did not and will not be processed, and that if he continues to file grievances "bad things could happen." (*Id.* at 1-2.)[1]

Dent alleges that the conspiracy has also affected his legal mail. Since March 17, 2016 (after he filed the grievance against Nally), Dent had been sending letters in search of "protective custody," as he was afraid that his attempts to expose IAD corruption threatened his well-being. (*Id.* at 4.) Dent had received no responses, so he requested copies of all of his incoming and outgoing legal mail. (*Id.*) This, however, turned up nothing. (*Id.* at 5.) Apparently, his letters never arrived at their intended destinations. (*Id.* at 7.) Dent alleges that Defendants Ms. Bradock and Nancy Taylor sent his letters to Nally and Minor. (*Id.* at 16.) Many of the letters contained information about IAD corruption, and one of them included a signed declaration concerning Nally's misconduct in another case from June 2015. (*Id.* at 5-6.)

Dent alleges he has been fired from his library job and lost a lot of property when he was sent to segregation. (*Id.* at 8.) He is afraid his life or wellbeing are at risk; he claims that prisoners have died under suspicious circumstances in segregation at Big Muddy, and that Nally retaliated against a prisoner last year for filing a grievance. (*Id.* at 8-9).

## **Discussion**

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break

---

[1] In this same vein, a fellow prisoner told Dent that "filing a grievance against [Nally] is like trying to commit suicide." (*Id.* at 3.)

the claims in Dent's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** The defendants conspired to, and did, retaliate against Dent for filing a grievance against Nally and for attempting to reveal allegedly corrupt IAD practices.
>
> **COUNT 2:** The defendants are liable for intentionally inflicting Dent with emotional distress.

### A. State Actor Requirement

As an initial matter, the Court must determine whether or not Defendant Marcantel, a prisoner at Big Muddy, is a state actor amenable to suit under § 1983. "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Because Dent has alleged that Marcantel conspired with the other defendants (all of whom are state employees) to deny Dent his constitutional rights, the lawsuit may proceed against Marcantel at this preliminary stage in the lawsuit.

### B. Retaliation

To state a retaliation claim, an inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). An inmate need not

plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

Relative to the conspiracy allegations, claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Ultimately, "to establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

**Count 1** states a colorable First Amendment retaliation claim against the named defendants. One could infer from the timing of the events related above that the defendant state officials (along with Marcantel) conspired to exact punishment for Dent's grievance and threats of exposing IAD's allegedly corrupt practices.

### C. Intentional Infliction of Emotional Distress

**Count 2**, which claims that the defendants are liable for the tort of intentional infliction of emotional distress, does not survive preliminary review. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho–Chunk*

*Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.,* 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.,* 610 N.E.2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker,* 256 F.3d at 490.

Here, Dent has not shown that the defendants' actions actually caused severe emotional distress. Therefore, **Count 2** is dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **NICK NALLY**, **LT. MINOR**, **C/O MILLER**, **NANCY TAYLOR**, **W. BRADOCK**, **LT. DAVIS**, **MAJOR FOLSON**, **SHANE MARCANTEL**, and **JASON GARNETT**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**. **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **NICK NALLY**, **LT. MINOR**, **C/O MILLER**, **NANCY TAYLOR**, **W. BRADOCK**, **LT. DAVIS**, **MAJOR FOLSON**, **SHANE MARCANTEL**, and **JASON GARNETT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed

a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including as to Plaintiff's motion to appoint counsel (Doc. 5), motion for preliminary injunction (Doc. 11), and motion for copies (Doc. 12).

Further, this entire matter is **REFERRED** to a United States. Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**DATED: May 17, 2016**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**