# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES DENT,

    Plaintiff,

v.

NICK NALLY, DENISE MINOR, WINNIE BRADDOCK, JASON GARNETT, TY WALLACE, and BARRY LASATER,

    Defendants.

Case No. 16-CV-00442-NJR-GCS

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Charles Dent is an inmate in the Illinois Department of Corrections ("IDOC") who resided at Big Muddy Correctional Center ("Big Muddy") at the times relevant to this case (Doc. 126). Dent alleges that shortly after he arrived at Big Muddy in July 2012, he was approached by Defendant Nick Nally, a Correctional Officer in the Internal Affairs Department ("IAD") (*Id.* at p. 4). Nally asked Dent whether he would be interested in working as a confidential informant for the Big Muddy IAD, and Dent agreed (*Id.*). Dent was also assigned to work in the law library as a clerk (*Id.* at p. 5). Dent alleges that on several occasions, Nally instructed him to discourage other inmates from filing grievances and lawsuits against Big Muddy personnel (*Id.*). Dent also learned that Nally and other IAD personnel were allowing drugs to come in to the facility through commissary, assaulting inmates, framing inmates, and punishing and retaliating against

inmates for assisting other inmates with filing grievances (*Id.*).

On March 2, 2016, Dent informed his supervisor at the law library that he was a confidential informant and wanted to report a pattern of corruption within Big Muddy's IAD (*Id.*). The supervisor relayed the conversation to Defendant Jason Garnett, the Warden of Big Muddy, by filing an incident report (*Id.* at p. 6). The report reads:

> I immediately observed that [Dent] was NOT kidding around. I have been surprised that, since Lt. Schuler retired (I.A. Supervisor), the facility has appeared to be run by thugs in I.A. who are unscrupulous. . . I.A. Staff are breaking the law and breaking the rules, covering for themselves, for other security staff, and for some inmates even. I'm the only one who knows it all, and if I tell, they will know that it's me who told on them.

(*Id.*).

Garnett forwarded the incident report to Nally, and the two entered into a conspiracy to retaliate against Dent for attempting to expose IAD's corrupt practices (*Id.*). Later that month, Nally leaked confidential information Dent shared with IAD, which exposed Dent as an informant (*Id.* at p. 9).

Dent filed a grievance on March 22, 2016, complaining that Nally revealed the confidential information to another inmate (*Id.*). Dent submitted the grievance to the grievance office at Big Muddy, but the counselor sent the grievance directly to Nally instead of properly processing Dent's complaints (*Id.* at p. 11). Dent also sent a copy of the grievance directly to the Administrative Review Board ("ARB") (*Id.*). On March 29, 2016, Dent filed an emergency grievance, expressing fear that Nally would retaliate against him for filing the March 22 grievance and for signing a declaration in support of another inmate's lawsuit (*Id.*). The ARB returned Dent's grievances for failing to attach the facility's responses (*Id.*). Dent states that between March 22, 2016 and May 6, 2016, he

submitted over fifteen grievances related to the conspiracy of retaliation, and did not receive a single response (*Id.* at p. 12).

In April 2016, Nally questioned another inmate about whether Dent was improperly controlling which inmates used the law library (*Id.*). Defendant Denise Minor, a lieutenant at Big Muddy, requested all of the library files and request slips as part of the inquiry (*Id.*). Nally and Minor's suspicions were ultimately unsubstantiated (*Id.*).

Dent alleges that Nally and Minor directed Defendant Winnie Braddock, who was employed in Big Muddy's mailroom, to forward them Dent's outgoing legal mail instead of sending the mail to the proper parties (*Id.* at p. 13). This permitted Nally and Minor to inspect Dent's privileged correspondences (*Id.*).

Dent further alleges that Minor improperly placed him in segregation under the guise of an investigation pursuant to the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, *et seq.* (*Id.* at p. 14). According to Dent, Minor just wanted an opportunity to question him about his grievances and his intentions in pursuing the complaints (*Id.*). Minor became upset and told Dent his grievances would not be processed or logged (*Id.*).

Dent states that after he was released from segregation, Minor purposely placed him in a cell with a violent inmate (*Id.* at p. 15). Dent is openly gay and his new cellmate "hated homosexuals" (*Id.*). Dent's cellmate threatened and humiliated him over the course of the following three weeks (*Id.*).

On April 22, 2016, Dent filed this lawsuit under 42 U.S.C. § 1983, alleging Defendants violated his First Amendment rights and other federal laws by retaliating

against him for pursuing complaints against personnel at Big Muddy (Doc. 1).

On February 22, 2018, Dent filed an amended complaint, adding allegations against Defendants Ty Wallace and Barry Lasater (Doc. 126). According to the amended complaint, on April 27, 2016, Dent received mental health services from Wallace, a mental health professional at Big Muddy (*Id.* at p. 16). Dent told Wallace about this lawsuit, and Dent forwarded a summary of the communications to Minor in an incident report (*Id.*). At Minor's direction, Wallace recommended Dent be removed from his position with the law library (*Id.*). Dent was eventually fired (*Id.*).

Dent further alleges that on May 6, 2016, he was in the law library retrieving a folder of legal papers, when Lasater, a correctional officer at Big Muddy, stopped and questioned him about the papers (*Id.* at p. 17). Lasater, who was acting on orders from Minor, seized the folder and wrote Dent a disciplinary ticket (*Id.*). Lasater told Dent, "This is what happens when you file grievances against Lt. Minor and Nally" (*Id.*).

Dent was transferred to Shawnee Correctional Center ("Shawnee") in May 2016 (Doc. 13). On May 12, 2016, while residing at Shawnee, Dent submitted a grievance directly to the ARB that described Defendants' conduct related to the retaliation conspiracy (Doc. 172, Ex. 2). On December 13, 2016, the ARB returned Dent's grievance to him for failing to attach a facility response (Doc. 172, Ex. 3).

Dent currently proceeds on the following counts:

**Count 1:** Retaliation against Nally and Garnett for exposing Dent as a confidential informant;

**Count 2:** Retaliation against Minor, Nally, and Braddock for refusing to send Dent's privileged mail;

**Count 3:** Retaliation against Minor for improperly using a PREA investigation;

**Count 4:** Retaliation against Minor for placing Dent in a cell with a violent, homophobic inmate;

**Count 5:** Retaliation against Minor and Wallace for illegally disclosing confidential information with the intent of improperly firing Dent;

**Count 6:** Retaliation against Minor and Lasater for improperly taking Dent's legal papers; and

**Count 7:** Violation of Illinois' Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110, *et seq.*) against Wallace.

Wallace filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on May 8, 2018 (Doc. 149) and a motion for summary judgment for failure to exhaust administrative remedies on June 22, 2018 (Doc. 168). On August 8, 2019, United States Magistrate Judge Gilbert C. Sison entered a Report and Recommendation as to both of Wallace's motions, recommending that both be denied (Docs. 205 & 206).

### THE REPORT AND RECOMMENDATION ON THE MOTION TO DISMISS

In his Report and Recommendation on Wallace's motion to dismiss, Judge Sison noted that to state a First Amendment retaliation claim, Dent must allege (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action (Doc. 205) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Judge Sison found that Dent stated a claim for First Amendment retaliation against Wallace because Dent

alleged he engaged in protected activity by filing grievances and that Wallace and Minor worked together to remove him from his job in the law library to deter him from filing grievances (*Id.*).

Judge Sison also found that Dent stated a claim against Wallace under the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS § 110/1, *et seq.* ("the Confidentiality Act" or "the Act"). The Confidentiality Act prohibits the disclosure of confidential communications made in connection with "providing mental health services" to a patient without his or her consent. Wallace argues the information he shared with Minor falls under an exception to the Act that permits a mental health provider to disclose information without the patient's consent "[i]n the course of providing services . . . to any department, agency, institution or facility which has custody of the recipient pursuant to State statute or any court order of commitment." *Id.* at § 110/9. Judge Sison rejected Wallace's arguments and found that the disclosure was not made "in the course of providing services" because the disclosure was part of a conspiracy to retaliate against Dent. Accordingly, he recommends denying Wallace's motion to dismiss.

**THE REPORT AND RECOMMENDATION ON WALLACE'S MOTION FOR SUMMARY JUDGMENT**

Wallace argues Dent failed to exhaust his administrative remedies before filing his First Amended Complaint because he submitted grievances against Wallace directly to the ARB instead of to the institutional grievance office and the Warden. Judge Sison rejected Wallace's argument, citing the portion of the Illinois Administrative Code that instructs inmates to file grievances directly with the ARB when the issues "pertain to a

alleged he engaged in protected activity by filing grievances and that Wallace and Minor worked together to remove him from his job in the law library to deter him from filing grievances (*Id.*).

Judge Sison also found that Dent stated a claim against Wallace under the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS § 110/1, *et seq.* ("the Confidentiality Act" or "the Act"). The Confidentiality Act prohibits the disclosure of confidential communications made in connection with "providing mental health services" to a patient without his or her consent. Wallace argues the information he shared with Minor falls under an exception to the Act that permits a mental health provider to disclose information without the patient's consent "[i]n the course of providing services . . . to any department, agency, institution or facility which has custody of the recipient pursuant to State statute or any court order of commitment." *Id.* at § 110/9. Judge Sison rejected Wallace's arguments and found that the disclosure was not made "in the course of providing services" because the disclosure was part of a conspiracy to retaliate against Dent. Accordingly, he recommends denying Wallace's motion to dismiss.

**THE REPORT AND RECOMMENDATION ON WALLACE'S MOTION FOR SUMMARY JUDGMENT**

Wallace argues Dent failed to exhaust his administrative remedies before filing his First Amended Complaint because he submitted grievances against Wallace directly to the ARB instead of to the institutional grievance office and the Warden. Judge Sison rejected Wallace's argument, citing the portion of the Illinois Administrative Code that instructs inmates to file grievances directly with the ARB when the issues "pertain to a

Page **6** of **12**

alleged he engaged in protected activity by filing grievances and that Wallace and Minor worked together to remove him from his job in the law library to deter him from filing grievances (*Id.*).

Judge Sison also found that Dent stated a claim against Wallace under the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS § 110/1, *et seq.* ("the Confidentiality Act" or "the Act"). The Confidentiality Act prohibits the disclosure of confidential communications made in connection with "providing mental health services" to a patient without his or her consent. Wallace argues the information he shared with Minor falls under an exception to the Act that permits a mental health provider to disclose information without the patient's consent "[i]n the course of providing services . . . to any department, agency, institution or facility which has custody of the recipient pursuant to State statute or any court order of commitment." *Id.* at § 110/9. Judge Sison rejected Wallace's arguments and found that the disclosure was not made "in the course of providing services" because the disclosure was part of a conspiracy to retaliate against Dent. Accordingly, he recommends denying Wallace's motion to dismiss.

**THE REPORT AND RECOMMENDATION ON WALLACE'S MOTION FOR SUMMARY JUDGMENT**

Wallace argues Dent failed to exhaust his administrative remedies before filing his First Amended Complaint because he submitted grievances against Wallace directly to the ARB instead of to the institutional grievance office and the Warden. Judge Sison rejected Wallace's argument, citing the portion of the Illinois Administrative Code that instructs inmates to file grievances directly with the ARB when the issues "pertain to a

alleged he engaged in protected activity by filing grievances and that Wallace and Minor worked together to remove him from his job in the law library to deter him from filing grievances (*Id.*).

Judge Sison also found that Dent stated a claim against Wallace under the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS § 110/1, *et seq.* ("the Confidentiality Act" or "the Act"). The Confidentiality Act prohibits the disclosure of confidential communications made in connection with "providing mental health services" to a patient without his or her consent. Wallace argues the information he shared with Minor falls under an exception to the Act that permits a mental health provider to disclose information without the patient's consent "[i]n the course of providing services . . . to any department, agency, institution or facility which has custody of the recipient pursuant to State statute or any court order of commitment." *Id.* at § 110/9. Judge Sison rejected Wallace's arguments and found that the disclosure was not made "in the course of providing services" because the disclosure was part of a conspiracy to retaliate against Dent. Accordingly, he recommends denying Wallace's motion to dismiss.

**THE REPORT AND RECOMMENDATION ON WALLACE'S MOTION FOR SUMMARY JUDGMENT**

Wallace argues Dent failed to exhaust his administrative remedies before filing his First Amended Complaint because he submitted grievances against Wallace directly to the ARB instead of to the institutional grievance office and the Warden. Judge Sison rejected Wallace's argument, citing the portion of the Illinois Administrative Code that instructs inmates to file grievances directly with the ARB when the issues "pertain to a

facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 Ill. Admin. Code § 504.870(a). Judge Sison explained that Dent was residing at Shawnee when he submitted his grievance on May 12, 2016, which complains about incidents that occurred at Big Muddy. Thus, the only way Dent could exhaust his remedies was to send grievances directly to the ARB. Judge Sison concluded that Dent properly exhausted his remedies in December 2016 when he received the ARB's final response to the grievance. Thus, Judge Sison recommends denying Wallace's motion for summary judgment on exhaustion.

**OBJECTIONS**

Objections to the reports and recommendations were due on or before August 26, 2019 (Docs. 205 & 206). Wallace timely objected to the recommendation on the motion to dismiss (Doc. 207) but did not object to the recommendation on the motion for summary judgment.

In his objection, Wallace reiterates that the Confidentiality Act only covers confidential communications made in connection with "providing mental health . . . services to a recipient." 720 ILCS § 110/2. He also stresses that the Act permits mental health providers to share confidential information concerning inmates with the facility at which the inmate is in custody, "in the course of providing services." *Id.* at § 110/9. Wallace states that the Report and Recommendation found this exception does not apply because Dent's mental health visits with Wallace were not "services" at all; instead, they were merely a ruse to get Dent fired from his position in the law library. Wallace insists that under the logic of the Report and Recommendation, the Act cannot apply because

Judge Sison found he did not provide mental health services to Dent. Alternatively, Wallace contends that if the Confidentiality Act does apply, the exception to the Act shields him from liability. Wallace argues Count 7 of the First Amended Complaint must be dismissed under either interpretation.

Dent responded, arguing, in part, that Wallace's objection should be overruled because Wallace misstates Dent's allegations. Dent points out that the First Amended Complaint does not allege Wallace was part of the retaliation conspiracy at the time Wallace and Dent engaged in confidential communications. Thus, according to Dent, the Act applied when Wallace acquired the information. Dent alleges that Minor subsequently recruited Wallace into the conspiracy, however, and Wallace disclosed the confidential information as part of Defendants' retaliation scheme, *i.e.*, not in the course of providing services. Thus, Dent argues the Report and Recommendation correctly found that the committed persons exception does not apply.

### LEGAL STANDARDS

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). Where neither timely nor specific objections to the Report and Recommendation are made, however, this Court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985). Instead, the Court should review the Report and Recommendation for clear error. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). A judge may then

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### A. Rule 12(b)(6) Motions to Dismiss

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

### B. Rule 56 Motions for Summary Judgment

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

## C. Illinois Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed with the inmate's counselor, unless certain discrete issues are being grieved. *Id*. If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written recommendation to the Chief Administrative Officer (usually the Warden) within two months of receipt, "when reasonably feasible under the circumstances." *Id*. at § 504.830(e). The Warden then advises the inmate of a decision on the grievance. *Id.*

In some circumstances, the grievance procedures require inmates to initially file their grievances directly with the ARB, instead of through the facility. The Illinois Administrative Code provides, "Offenders shall submit grievances directly to the Administrative Review Board when grieving . . . issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 ILL. ADMIN. CODE § 504.870(a) ("Section 504.870(a)").

## C. Illinois Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed with the inmate's counselor, unless certain discrete issues are being grieved. *Id*. If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written recommendation to the Chief Administrative Officer (usually the Warden) within two months of receipt, "when reasonably feasible under the circumstances." *Id*. at § 504.830(e). The Warden then advises the inmate of a decision on the grievance. *Id.*

In some circumstances, the grievance procedures require inmates to initially file their grievances directly with the ARB, instead of through the facility. The Illinois Administrative Code provides, "Offenders shall submit grievances directly to the Administrative Review Board when grieving . . . issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 ILL. ADMIN. CODE § 504.870(a) ("Section 504.870(a)").

## C. Illinois Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed with the inmate's counselor, unless certain discrete issues are being grieved. *Id*. If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written recommendation to the Chief Administrative Officer (usually the Warden) within two months of receipt, "when reasonably feasible under the circumstances." *Id*. at § 504.830(e). The Warden then advises the inmate of a decision on the grievance. *Id.*

In some circumstances, the grievance procedures require inmates to initially file their grievances directly with the ARB, instead of through the facility. The Illinois Administrative Code provides, "Offenders shall submit grievances directly to the Administrative Review Board when grieving . . . issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 ILL. ADMIN. CODE § 504.870(a) ("Section 504.870(a)").

## DISCUSSION

Wallace contends that the Report and Recommendation on the motion to dismiss creates an anomaly. Specifically, that Wallace is subject to the Confidentiality Act because he provided "services" to Dent, yet he is not entitled to the committed persons exception because he was not providing services to Dent. Wallace's arguments misstate Judge Sison's holdings. The Report and Recommendation found that Wallace's *disclosure* of the information was not made in the course of providing services. Judge Sison never indicated that Wallace did not provide mental health services to Dent. Any opposite conclusion would be inconsistent with the plain language of the Act, which states that "[m]ental health services include but are not limited to 'examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation.'" *McGreal v. Ostrov*, 368 F.3d 657, 688 (7th Cir. 2004) (citing 740 ILCS § 110/2).

Moreover, Wallace cannot take shelter under the committed persons exception to the Confidentiality Act just because Dent is committed to the care of the IDOC. "The Confidentiality Act is carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances explicitly enumerated." *Sassali v. Rockford Memorial Hosp.*, 296 Ill. App. 3d 80, 84-85, 693 N.E.2d 1287 (1998). "In each instance where disclosure is allowed under the Act, the legislature has been careful to restrict disclosure to that which is necessary to accomplish a particular purpose." *Norskog v. Pfiel*, 197 Ill. 2d 60, 72, 755 N.E.2d 1, 10 (2001). In other words, "[t]he exceptions to the Confidentiality Act are very narrow." *Sassali*, 296 Ill. App. 3d at 83, 693 N.E.2d at 1289.

In this instance, Dent alleges that Wallace disclosed the confidential information to retaliate against him for filing a lawsuit against Big Muddy personnel. When accepting these allegations as true, Wallace's disclosure of the information was not "necessary" to accomplish any legitimate purpose. The Confidentiality Act evidences the "high value" the Illinois General Assembly places on the privacy rights of mental health patients. *Norskog*, 197 Ill. 2d at 10, 755 N.E.2d at 10. Permitting the disclosure of confidential inmate communications for any purpose—let alone a vindictive one—would be inconsistent with the spirit of the Act.

Contrary to Wallace's assertions, the Report and Recommendation on the motion to dismiss is logically sound and comports with the governing law. Accordingly, Wallace's objections are **OVERRULED.** Moreover, the Court has reviewed the Report and Recommendation on Wallace's motion for summary judgment and finds no clear error. Finally, the Court fully agrees with the findings, analysis, and conclusions of Judge Sison and **ADOPTS** the Report and Recommendation on the motion to dismiss (Doc. 205) and the Report and Recommendation on the motion for summary judgment (Doc. 206) in their entirety. The motion to dismiss (Doc. 149) and the motion for summary judgment (Doc. 168) filed by Ty Wallace are **DENIED.**

**IT IS SO ORDERED.**

DATED: September 17, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**